**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-00879

MANUEL ORTIZ, an individual,

Plaintiff

v.

CATHOLIC HEALTH INITIATIVES COLORADO
d/b/a CENTURA ST. ANTHONY HOSPITAL,
a Colorado nonprofit corporation,

Defendant

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Manuel Ortiz ("Mr. Ortiz"), by and through his attorneys, Miller & Law, PC, and for his Complaint and Jury Demand against the Defendant, Catholic Health Initiatives Colorado d/b/a Centura St. Anthony Hospital ("St. Anthony," the "Hospital," or "Defendant"), states as follows:

### NATURE OF THE ACTION

This action is brought to redress St. Anthony's violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e. Specifically, the Plaintiff alleges that St. Anthony engaged in unlawful employment practices on the basis of Mr. Ortiz's male gender and/or American Indian race, then retaliated against him for complaining of discrimination by suspending and then terminating his employment, in violation of Title VII. The abrupt, pretextual suspension and termination of Plaintiff's 22-year employment occurred immediately after he complained to St. Anthony of sexual harassment by a Caucasian female coworker.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1343; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5(j).

2. The unlawful employment practices and defamatory acts alleged herein were committed within the jurisdictional boundaries of the United States District Court for the District of Colorado and venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3).

## ADMINISTRATIVE PREREQUISTIES

3. Prior to filing this Complaint, Plaintiff complied with all procedural prerequisites for bringing this lawsuit. He timely dual-filed charges of employment discrimination against St. Anthony with the Colorado Civil Rights Division ("CCRD") and the United States Equal Employment Opportunity Commission within 300 days of the discrimination and retaliation to which he was subjected.

4. On December 18, 2024 Plaintiff was issued a Notice of Right to Sue by the CCRD with respect to his charge of employment discrimination against St. Anthony (the "RTS Notice").

5. The filing date of this Complaint is within 90 days of Plaintiff's receipt of the RTS Notice.

6. Plaintiff has satisfied all procedural prerequisites for suing St. Anthony in federal court under 42 U.S.C. §2000e-5(f)(1).

## PARTIES

7. Mr. Ortiz is an individual resident of Colorado with a residential address of 10280 West Alamo Place, Littleton, CO 80127.

8. St. Anthony is a Colorado nonprofit corporation that operates a hospital system and

is headquartered at 9100 E. Mineral Cir., Centennial, CO 80112.  St. Anthony employs more than 500 employees.

## GENERAL ALLEGATIONS

9. Mr. Ortiz, who is Native American and Hispanic, was employed by St. Anthony at its Lakewood, Colorado campus (the "Lakewood Facility") as an Exercise Physiologist from September 17, 2001 through January 29, 2024.

10. Mr. Ortiz satisfactorily performed the functions and requirements of his job at all times relevant to this Complaint.

11. At all relevant times, Mr. Ortiz was the only male on the Hospital's Exercise Physiology team, and its only Native American/Hispanic employee.

12. Mr. Ortiz was one of only two (2) male employees among the 18 employees who reported to Assistant Nurse Manager Julie Day ("Ms. Day") at St. Anthony during the year leading up to Mr. Ortiz's termination; these two men were the only two employees reporting to Ms. Day who were terminated during this period.

13. After experiencing no issues during the first 22.5 years of his employment at St. Anthony, everything changed for Mr. Ortiz in late January 2024, immediately after he complained to the Hospital of a violation of the Hospital's Anti-Harassment Policy by "C.F.," a Caucasian female who was one of the 16 female employees who reported to Ms. Day, and who also was one of the 16 Caucasian employees who reported to Ms. Day.

14. Other than a single verbal warning for attendance, Mr. Ortiz was not written up, warned, coached, counseled or otherwise disciplined by the Hospital about anything that occurred during his employment prior to January 19, 2024.

15. On January 19, 2024, Mr. Ortiz was harassed based on his protected classes when

C.F. came into the men's locker room at the Lakewood Facility while Mr. Ortiz was using the restroom to let him know that there was a telephone call for him.

16. Mr. Ortiz, who was in the locker room with his pants down at the time, felt extremely uncomfortable about this exchange.

17. When Mr. Ortiz subsequently discussed the incident with C.F., she admitted to having entered the men's locker room, but she was entirely unapologetic for her actions.

18. Accordingly, later that same day, Mr. Ortiz engaged in protected activity when he complained to his supervisor, Ms. Day, about C.F.'s conduct.

19. On January 22, 2024, Mr. Ortiz further engaged in protected activity when he met with Ms. Day to explain that Ms. Frazier had walked into the men's locker room while he was using the restroom, and that he considered this to be a violation of the Hospital's Sexual Harassment Policy.

20. Ms. Day told Mr. Ortiz that St. Anthony would launch an investigation.

21. On or about January 23, 2024, Mr. Ortiz was denied equal terms and conditions of employment based on his male gender or his race and/or in retaliation for having engaged in protected activity; specifically, Ms. Day informed Mr. Ortiz that the Hospital would not be launching an investigation into his complaints, referring to his claims as "unsubstantiated."

22. Mr. Ortiz was upset by this information, as he reasonably believed that his complaint had not been investigated.

23. On information and belief, the Hospital never investigated Mr. Ortiz's sexual harassment claim, and it did not speak with Mr. Ortiz as part of any investigation following his initial complaint.

24. Mr. Ortiz further engaged in protected activity when he complained to Ms. Day

about how he believed that an investigation would have been conducted in earnest had the gender roles been reversed and the complaint had been made by a female employee about him.

25. Mr. Ortiz pointed to his phone, placed his hand on Ms. Day's desk (but did not slam his hand as the Hospital later falsely maintained) and said that he had an attorney who he was going to speak with about his rights.

26. Mr. Ortiz went outside to talk to his fiancée about how to move forward for the day, and they decided that he should take the day off using Health and Family Wellness ("HFW") time.

27. When Mr. Ortiz walked back inside, he presented his HFW request to Ms. Day, and Ms. Day agreed that it was acceptable for Mr. Ortiz to utilize this HFW time off.

28. When Mr. Ortiz returned to the main office area, Ms. Day assisted Mr. Ortiz in locating a copy of the Hospital's Anti-Harassment Policy; Mr. Ortiz made copies of the Policy and emailed a copy to himself.

29. At that time, no one other than Mr. Ortiz and Ms. Day was in the office, and there was only one other co-worker in the area; that coworker was teaching yoga in a closed room, while two other employees were in the gym working with a Pulmonary Rehab class.

30. Mr. Ortiz then made his way to the locker room, where he gathered his belongings to leave.

31. Mr. Ortiz had his hands full with his backpack, coffee mug and water bottle, so he used his foot to close his locker; the locker door did close harder than Mr. Ortiz had anticipated, but he did not angrily or intentionally slam the door.

32. The locker room was small, and it was easy for Mr. Ortiz to ascertain that there were no patients present, as they were all either doing yoga or Pulmonary rehab.

33. While Mr. Ortiz was in the process of leaving the Lakewood Facility, he did not

utilize any profanity or make any threats toward anyone; Mr. Ortiz talked to himself and reminded himself that he was in control.

34. Ms. Day did not call security while Mr. Ortiz was at the Lakewood Facility on January 23, 2024; she admits that the thought of calling security never crossed her mind.

35. Mr. Ortiz finished collecting his belongings and departed for the day without incident.

36. Thereafter, Mr. Ortiz engaged in protected activity later on January 23, 2024 when he complained to the Hospital's HR Department about C.F.'s conduct, as well as about Ms. Day's refusal to investigate his claim.

37. Later that same day, Mr. Ortiz was suspended by Ms. Day and Interim Vice President of Operations, Jessica Donaldson ("Ms. Donaldson"), who falsely accused Mr. Ortiz of having acted violently when meeting with Ms. Day.

38. Mr. Ortiz thereafter engaged in additional protected activity by complaining to the Hospital's Integrity Center about C.F.'s conduct, the Hospital's failure to investigate his complaints, and the Hospital's retaliatory suspension for Mr. Ortiz having engaged in protected activity.

39. On January 24, 2024, Mr. Ortiz met with Senior Employee Relations Advisor, Katherine Edell ("Ms. Edell"), and he was denied equal terms and conditions of employment when Ms. Edell refused to discuss his complaints against C.F.; Ms. Edell instead falsely accused Mr. Ortiz of having yelled obscenities when meeting with Ms. Day.

40. On January 29, 2024, Mr. Ortiz's employment was terminated by Ms. Day, Ms. Donaldson, and Ms. Edell.

41. According to the termination notice, St. Anthony claimed that on January 23, 2024

6

"it was reported to Human Resources that [Mr. Ortiz] engaged in violent and threatening behavior in the workplace."

42. Specifically, the Hospital maintained to Mr. Ortiz that "you slammed your fists on a desk while yelling profanities, you slammed open the locker room door while a patient was inside, you then made the following comment to another employee: 'you don't know what just got triggered. You do not want to see my Native American temper come out.'"

43. According to the Hospital, Mr. Ortiz was asked to leave the area on January 23, 2024, and he thereafter "continued to yell obscenities to the effect of 'fuck this' in front of other staff and while patients were in the department."

44. The Hospital's allegations were false; Mr. Ortiz did not engage in violent or threatening behavior at St. Anthony on January 23, 2024 or at any other time.

45. Contrary to the Hospital's accusations, Mr. Ortiz dd not slam his fist against a desk or use profanity such as "fuck this," and he did not engage in any such behavior in front of other staff or while patients were in the Department.

46. Contrary to the Hospital's accusation, Mr. Ortiz did not make the statement that "you don't know what you have triggered!"

47. Mr. Ortiz did tell himself that I don't want to see my Native American side (not temper) come out, but he also remarked that "I am in control of myself."

48. The Hospital has no proof that Mr. Ortiz violated any Hospital policy or acted in a rude or offensive way.

49. The Hospital's explanation for Mr. Ortiz's suspension and termination was pretextual, and the Hospital instead was directly motivated by discriminatory and/or retaliatory animus toward Mr. Ortiz.

50. Upon information and belief, C.F. was not disciplined in any way by the Hospital for her actions; she remains employed at St. Anthony to this day.

51. The Hospital hired yet another Caucasian female ("L.Z.") to replace Mr. Ortiz as an exercise physiologist on May 13, 2024.

52. Since May 13, 2024, all 17 employees who have reported to Ms. Day are female, and all but 1 of those 17 employees are Caucasian.

53. As a direct and proximate result of St. Anthony's illegal acts, Mr. Ortiz has suffered severe financial and emotional distress.

## CLAIMS FOR RELIEF

### First Claim For Relief
### Gender Discrimination in Violation of Title VII

54. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

55. Defendant, directly and/or through its agents, discriminated against Plaintiff during his employment on the basis of his male gender, as described herein.

56. Through Ms. Day, Ms. Donaldson and/or Ms. Edell, Defendant is one of those "unusual employers that discriminates against the majority" with respect to its discrimination against Plaintiff on the basis of his male gender.

57. As described *infra,* during his employment, as well as in terminating his employment, Defendant treated Plaintiff in a disparate fashion than one or more similarly-situated female colleagues, including but not limited to the manner in which Defendant responded to Plaintiff's sexual harassment complaint as well as to his subsequent protected activities, as well as through Defendant's decision to suspend and then terminate his employment.

58. Defendant's unlawful employment practices complained of in the foregoing

8

paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

59. As a consequence of Defendant's illegal conduct, Plaintiff suffered, and continues to suffer, irreparable injury and damages.

## Second Claim For Relief
### Racial Discrimination in Violation of Title VII

60. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

61. Defendant, either directly or by and through its agents, discriminated against Plaintiff because of his race; specifically, because Plaintiff is not Caucasian.

62. Defendant engaged in unlawful discriminatory employment practices against Plaintiff with respect to the terms and conditions of Plaintiff's employment based on his race.

63. Defendant's unlawful employment practices include, without limitation, the direct perpetuation of discrimination of Plaintiff by management and coworkers, Defendant's failure to protect Plaintiff from discrimination at the hands of management and coworkers, Defendant's disparate treatment of Plaintiff from similarly-situated colleagues through disparate disciplinary practices, Defendant's election to suspend Plaintiff, and its election to terminate his employment, all of which denied Plaintiff equal terms and conditions of employment and otherwise adversely affected his employment status because of his race or color.

64. Defendant's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

65. As a consequence of Defendant's illegal conduct, Plaintiff suffered, and continues to suffer, irreparable injury and damages.

### Third Claim For Relief
### Retaliation in Violation of Title VII

66. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

67. Plaintiff engaged in protected activities by complaining to Defendant of gender discrimination and retaliation.

68. As described *infra,* Plaintiff was subjected to retaliation by Defendant as a result of his having engaged in protected activities, including by being suspended and having his employment terminated.

69. Defendant's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

70. As a consequence of Defendant's illegal conduct, Plaintiff suffered, and continues to suffer, irreparable injury and damages.

### Additional Claims For Relief

71. Plaintiff reserves the right to add additional claims after discovery.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award Plaintiff the following relief, to the fullest extent allowed by law:

i. Actual monetary damages for all injuries suffered by Plaintiff in an amount to be determined at trial, including but not limited to, damages for lost past and future wages and employment benefits;
ii. Punitive damages on all claims allowed by law and in an amount to be determined at trial;
iii. Attorneys' fees and costs, including expert witness fees, on all claims allowed by law;
iv. Pre- and post-judgment interest at the highest lawful rate; and
v. Any further relief that this court deems just and proper, and any other relief as allowed by law.

## **JURY DEMAND**

The Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 17th day of March 2025.

       MILLER & LAW, PC

       **/s/ David J. Meretta**
       David J. Meretta, No. 44409
       1900 W. Littleton Blvd.
       Littleton, CO 80120
       (303) 722-6500
       (303) 722-9270 fax
       djm@millerandlaw.com

       ATTORNEYS FOR PLAINTIFF